COURT OF APPEALS OF VIRGINIA


Present:  Judges Baker, Willis and Overton
Argued at Norfolk, Virginia


DAVID ROSS STROHECKER
                                        OPINION
v.         Record No. 0844-95-1    BY JUDGE JOSEPH E. BAKER
                                     SEPTEMBER 24, 1996
COMMONWEALTH OF VIRGINIA


         FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                 Kenneth N. Whitehurst, Jr., Judge

         Stephen C. Mahan (Brydges, Mahan & O'Brien,
         on briefs), for appellant.

         Leah A. Darron, Assistant Attorney General
         (James S. Gilmore, III, Attorney General, on
         brief), for appellee.


     David Ross Strohecker (appellant) appeals from his bench

trial convictions by the Circuit Court of the City of Virginia

Beach (trial court) of murder while attempting to commit

extortion in violation of Code § 18.2-33, attempted extortion in

violation of Code § 18.2-59, and use of a firearm in the

commission of murder in violation of Code § 18.2-53.1.  Appellant

contends that the trial court erred (1) in refusing to stay the

execution of its sentence and in denying bond pending his appeal,

(2) in admitting hearsay evidence, (3) in refusing to allow

appellant to elicit certain impeachment testimony, and (4) in

finding the evidence sufficient to support his convictions.

     On appeal, we view the evidence "in the light most favorable

to the Commonwealth, granting to it all reasonable inferences

fairly deducible therefrom."  Evans v. Commonwealth, 215 Va. 609,

612, 212 S.E.2d 268, 271 (1975). Viewed accordingly, the record discloses that on February 14, 1991, upon completing his day's work as a night-shift security guard in Cleveland, Ohio, appellant joined a friend, Robert Bair (Bair), in Pittsburgh, and drove to Virginia Beach to collect a debt alleged to have been owed them by Mike Harper (the victim).

Appellant and Bair drove all day and arrived at the victim's place of employment, Checker's Pizza (the store), on Norfolk Avenue in Virginia Beach between 6:00 and 9:00 p.m.

Mark Currier (Currier), who owned the store in February 1991, had known the victim for several years. The victim had been employed by Currier for a few weeks, receiving room and board at Currier's apartment in payment for his work. On February 14, 1991, the victim arrived at work around 4:00 p.m. Bair and appellant arrived at the store about 9:00 p.m. for the purpose of procuring $1,000 they claimed the victim owed them. Currier closed his business around 11:30 p.m. and told the victim, who was with appellant and Bair, that he was going home. Currier left the store and went home.

At approximately 12:30 a.m., appellant, Bair, and the victim entered Currier's apartment. Appellant had Currier's .357 caliber handgun tucked in the waistband of his pants. Currier had last seen the gun in his file cabinet at the restaurant three or four days before. Over appellant's hearsay objection, Currier testified that the victim stated that he "needed to talk to"

Currier and asked him to go upstairs. Bair protested and told the victim to talk to Currier downstairs. The victim then told Currier, "I need $1,000 or they're going [sic] kill me." At that point, "Bair jumped in and said, that's right. [The victim] has screwed us over one too many times, and he's not going to get away with it." Currier replied that he did not have the money and asked the victim where he could get $1,000 at 12:30 a.m. The victim wrote down the names and telephone numbers of some friends and, because the apartment's telephone service had been disconnected, asked Currier to call his friends from a pay phone located three-quarters of a mile away. Bair and appellant "shoved" Currier out the apartment door and Bair told Currier, "Don't take longer than 15 minutes or we're going to kill [the victim]. Don't go to the police or we're going to kill him." Appellant added, "That's right. We're looking at thirty years anyway."

Over appellant's objection that it was hearsay and improper opinion testimony from a lay witness, Currier testified that when he observed the victim in the parking lot as he closed the store and went home, the victim "was not very happy" and that the victim had indicated that "he was in fear of his life." Currier also testified that when he left the apartment to attempt to raise the $1,000, the victim was physically shaking.

On cross-examination, Currier conceded that although he had testified that when he left the store the victim was "not happy"

- 3 -

and "in fear of his life," he did not offer the victim his gun, offer to call the police, offer to "stick around" so there would not be any trouble, or offer to drive the victim home. On re-direct, Currier testified over appellant's hearsay objection that the victim had told him to call the police if he did not return in the morning.

Appellant testified in his own behalf. He stated that he and the victim were best friends, and that the victim owed him "about $500" for unpaid rent on an apartment lease.

Appellant further testified that he had agreed to share driving duties from Pennsylvania to Virginia Beach with Bair, who, himself, had unsuccessfully tried to collect a debt the victim owed him. Shortly after arriving at Virginia Beach, the victim asked appellant and Bair "what [they] were there for." They "smiled at him" and said, "You know why we're here. We want the money."

Appellant admitted that he, the victim, and Bair went to Currier's apartment and, while asserting that he could not hear a conversation between Bair, the victim, and Currier while in the apartment, he admitted hearing Bair tell Currier and the victim not to go upstairs. He also heard Bair tell Currier, as Currier was going out to procure money, that he wanted Currier back in fifteen minutes because the victim had "screwed [them] over one too many times." Appellant denied hearing Bair threaten to kill the victim.

Appellant did not deny saying, after Bair threatened to kill the victim, that "we're going to do thirty years anyway, we've got nothing to lose." He stated only that he could not recall having said anything like that.

Appellant further admitted hearing Currier say that he could not "come up" with $1,000, at which time appellant told Currier to get what he could. Currier then left his apartment.

Appellant admitted that he had the gun in his jacket pocket at this time but that the victim originally had the gun and that Bair had taken it from him and given it to appellant. After Currier left, appellant went to the bathroom. When he did so, he removed the gun from his pocket because it was in his way. He then exited the bathroom with the gun in his hand and walked up to and leaned on the edge of the couch where the victim was seated. Appellant testified that as he turned to walk away, the gun fired, and when he turned around, the room was smokey and he saw the victim's head roll back. He did not recall pulling the trigger.

After leaving the apartment, Currier called Colleen Damico (Damico), the victim's girlfriend and spoke with Damico and her brother, Patrick Dungan (Dungan). Dungan arrived at Currier's apartment within twenty minutes of Currier's telephone call and found the victim dead, shot in the face at close range. Appellant and Bair had left the apartment and driven back to Pennsylvania. Later that afternoon, February 15, 1991, they

turned themselves in to the Pennsylvania police and gave them Currier's .357 revolver.  During an interview with Detective Michael Smith (Smith), appellant told Smith that he and Bair had traveled to Virginia Beach to collect a debt, that the victim had pulled a gun, that it went off, and that the victim was shot in the head.  Later, during a test for powder residue on appellant's hand, appellant admitted to the Pennsylvania police that he had fired the gun.  Appellant then indicated to Smith that the gun had discharged accidently.  On cross-examination, appellant stated that he did not recall telling Smith that the victim "pulled the gun and got shot in the head."

On rebuttal, Damico testified that she was at the store on the night in question and, while there, that she had heard appellant and the victim talking about burning the victim's yellow Ford pickup truck.  Over appellant's hearsay objection, Damico testified that the victim had told her that he was afraid that the appellant and Bair were going to throw him into a fire, that he was going to take Currier's gun, and that, if she did not hear from him the next day, to call the police and tell them what she knew.

I.  Suspension of Sentence and Bond

On August 3, 1992, appellant filed a motion requesting that "the [trial c]ourt set bond for [appellant's] release from confinement pending action by the Court of Appeals on his appeal, or that the execution of the sentence be postponed pending action

by the Court of Appeals on said appeal . . . ." Appellant contends that Code § 19.2-319 requires the trial court to both set bail and suspend execution of a convict's sentence pending appeal. We disagree.

Code § 19.2-319 grants discretionary authority to the trial court to set bail pending such appeal. In this case, no abuse of discretion has been shown. Appellant first fled then misrepresented to the Pennsylvania police, with conflicting accounts, how the gun fired. In the absence of a showing of abuse of discretion, the trial court's denial of bail will not be disturbed. See Dowell v. Commonwealth, 6 Va. App. 225, 228, 367 S.E.2d 742, 744 (1988); Ramey v. Commonwealth, 145 Va. 848, 851, 133 S.E. 755, 756 (1926).

Code § 19.2-319 provides for the postponement of the execution of a sentence in order to give a defendant "a fair opportunity to apply for a writ of error." Ramey, at 851, 133 S.E. at 756. Here, appellant made no assertion to the trial court that he needed additional time to prepare his petition for appeal; rather, from appellant's motion it appears that he misconstrued the statute, requesting that execution of his sentence be postponed "pending action by the Court of Appeals . . . ." Code § 19.2-319 provides for no such relief. We find no prejudice to appellant by the trial court's refusal to suspend execution of this sentence.

II.  Hearsay Evidence

During the course of appellant's trial, the trial court allowed the Commonwealth, over appellant's objections, to elicit hearsay testimony from Currier as to several out-of-court statements made by the victim and Bair. The trial court allowed Currier to testify that when the victim entered his apartment, the victim told him, "I need to talk to you. Let's go upstairs." Currier then related that they never went upstairs because Bair objected, stating, "No, stay down here and talk." Currier then was permitted to testify that the victim told him, "I need $1,000 or they're going [sic] kill me." Currier further testified that, in response to what the victim said, Bair stated, "That's right. [The victim] has screwed us over one too many times, and he's not going to get away with it." When Currier, at the victim's request, was about to leave his apartment to attempt to obtain money for the victim, Currier further testified that Bair said, "Don't take longer than 15 minutes or we're going to kill [the victim]. Don't go to the police or we're going to kill him," and appellant corroborated Bair's threat by adding, "That's right. We're looking at thirty years anyway."

The Commonwealth argues that these statements were admissible against appellant as "adoptive admissions."[1]

---

[1] Appellant alleges that the Commonwealth is arguing for the first time on appeal that the hearsay statements in question were admissible as adoptive admissions. We disagree. The record clearly indicates that, when appellant challenged the introduction of the first of these statements at trial, the Commonwealth argued that it was "being offered to show that the statement was made and corroborated by the defendant." While using the word "corroborated" in place of the term of art,

- 8 -

As a general rule, when a statement that tends to incriminate one accused of committing a crime is made in the presence and hearing of the accused and such statement is not denied, contradicted, or objected to by him, both the statement and the fact of the accused's failure to deny the statement are admissible in a criminal proceeding against the accused. James v. Commonwealth, 192 Va. 713, 718, 66 S.E.2d 513, 516 (1951). The accused's conduct may then be considered as evidence of his acquiescence in the truth of the statement if the following requirements are met:

> In order that the silence of one accused of crime following a statement of a fact tending to incriminate him may have the effect of a tacit admission, he must have heard the statement and have understood that he was being accused of complicity in a crime, the circumstances under which the statement was made must have been such as would afford him an opportunity to deny or object, and the statement must have been such, and made under such circumstances, as would naturally call for a reply. The test is whether men similarly situated would have felt themselves called upon to deny the statements affecting them in the event they did not intend to express acquiescence by their failure to do so.

Owens v. Commonwealth, 186 Va. 689, 699, 43 S.E.2d 895, 899 (1947) (citation omitted). The above principle has the universal approval of both the courts and text writers.[2]

"adopted," the import of the Commonwealth's argument is clear.

[2]See 4 John Henry Wigmore on Evidence § 1071 (Chadbourn rev. 1970); 22 C.J.S. Criminal Law § 734 (1961); 3 Jones, Commentaries on Evidence § 1044, at 1923 (2d ed. 1926); S. Greenleaf, A Treatise on the Law of Evidence § 197 (16th ed. 1899); Note,

Hearsay evidence is testimony given by a witness who relates, not what he knows personally, but what others have told him or what he has heard said by others.  Cross v. Commonwealth, 195 Va. 62, 74, 77 S.E.2d 447, 453 (1953).  When offered for the truth of the matters asserted, unless the statement falls within one of the many exceptions, such evidence is not admissible.  This has been the law in Virginia since 1795.  See Claiborne v. Parish, 2 Va. (2 Wash.) 146 (1795).  A person seeking to have hearsay declarations admitted must clearly show that they are within an exception.  Doe v. Thomas, 227 Va. 466, 472, 318 S.E.2d 382, 386 (1984); Foley v. Commonwealth, 8 Va. App. 149, 161, 379 S.E.2d 915, 921 (1989).

Here, Currier testified that appellant was present when the victim told Currier that he needed $1,000 or "they're going [sic] kill me."  Currier then testified that Bair responded, "[t]hat's right."  Clearly, these statements accused appellant of complicity in a crime and would naturally call for a reply if they were not true.  Appellant admitted at trial that he heard

Evidence of Statements Made in the Presence of a Party, 43 Harv. L. Rev. 289 (1929); Note, Evidence-Defendant's Refusal to Speak as Tending to Incriminate, 24 Mich. L. Rev. 508 (1926); Note, Evidence-Implied Admissions-Determination of Whether Accusation Calls for Answer, 23 Mich. L. Rev. 413 (1925); Note, Evidence-Implied Admission From Silence to Accusation, 21 Mich. L. Rev. 806 (1923).  Numerous cases on the subject are collected in the following annotations: H.D.W., Ann., Admissibility of Inculpatory Statements Made in the Presence of Accused, and Not Denied or Contradicted By Him, 115 A.L.R. 1510 (1938); H. Rockwell, Ann., Admissibility of Inculpatory Statements Made in the Presence of Accused, and Not Denied or Contradicted By Him, 80 A.L.R. 1235 (1932).

statements made by Bair just prior to and after the victim's declaration that Bair and appellant would kill him if they were not paid $1,000. Thus, the statement of the victim that, "I need $1,000 or they're going [sic] kill me," Bair's reply of, "That's right. [The victim] has screwed us over one too many times, and he's not going to get away with it," and appellant's affirmance of Bair's statement that they would kill the victim if Currier failed to return within fifteen minutes or if Currier sought police help, were admissible against appellant as tacit or adoptive admissions. While the statement of the victim to the effect that he needed to talk to Currier upstairs, and Bair's subsequent protest to them doing so, were hearsay, not admissible as adoptive admissions, they were of marginal evidentiary value and their introduction constitutes harmless error.

For the adoptive admission exception to apply, a direct accusation is not essential.

> Under the adoptive admission exception to the rule against hearsay, a declarant's accusatory or incriminating statements are not admitted to prove the truth of matters asserted. Such statements are admissible because they lay the foundation to show that the defendant acquiesced or admitted to the statement. An adoptive admission avoids the confrontation problem because the words of the hearsay become the words of the defendant.

29A Am. Jur. 2d Evidence § 802 (1994); see Owens, 186 Va. at 698-99, 43 S.E.2d at 899. While the hearsay statement merely lays the foundation, the conduct of the accused, by remaining

- 11 -

silent and failing to deny it, is admissible as substantive evidence to prove the accused's acquiescence in its truth.  Id. at 698, 43 S.E.2d at 899.

The trial court did not err in admitting the above-described hearsay evidence.

### III.  State of Mind Evidence

Appellant further contends that Currier's testimony purportedly describing the victim's state of mind on the night before he was killed was erroneously admitted.  We disagree.

Appellant challenges the introduction of Currier's testimony that the victim "was not very happy," that he had told Currier that he was "in fear of his life," that he "needed $1,000 or they are going [sic] kill me," and that the victim asked Currier "to call the police if he did not return in the morning."  He also challenges the admission of Damico's testimony that the victim told her that he "was afraid they were going to throw him into [a] fire," that he "was going to take [Currier's] gun," and that if she "didn't hear from him the next day, . . . to call the police and tell them everything that [she] knew."

The Commonwealth argues that the objected to evidence was admissible to show the victim's state of mind and further contends that even if the evidence was inadmissible, appellant may not be heard to complain on appeal because, after objecting and being overruled, appellant himself introduced evidence of the same character.

On cross-examination of the witness who testified concerning the victim's fears, appellant appeared to concede that the victim may have been in fear at the time indicated. By his questions, appellant attempted to show that the victim's fearful state of mind was the result of "a fight at a bar a couple of days beforehand." Having introduced evidence of the same character, appellant is confronted by a substantive rule of law which renders irreversible the action of the trial court in permitting the Commonwealth to introduce evidence of the victim's state of mind. Hubbard v. Commonwealth, 243 Va. 1, 9, 413 S.E.2d 875, 879 (1992). "The rule is that 'where an accused unsuccessfully objects to evidence which he considers improper and then on his own behalf introduces evidence of the same character, he thereby waives his objection, and we cannot reverse for the alleged error.'" Id. See also Saunders v. Commonwealth, 211 Va. 399, 400, 177 S.E.2d 637, 638 (1970).

Moreover, we disagree with appellant's contention that the trial court erred when it permitted the introduction of the objected to evidence. If relevant to an issue at trial, evidence of a person's state of mind may be admitted as an exception to the hearsay rule. Johnson v. Commonwealth, 2 Va. App. 598, 602, 347 S.E.2d 163, 165 (1986).

> It would be vain to attempt to reconcile all of the conflicting cases as to when such statements can be admitted. Much must be left to the discretion of the trial judge, but where the proper determination of a fact depends upon circumstantial evidence, the safe practical rule to follow is that in no

case is evidence to be excluded of facts or circumstances connected with the principal transaction, from which an inference can be reasonably drawn as to the truth of a disputed fact. The modern doctrine in this connection is extremely liberal in the admission of any circumstance which may throw light upon the matter being investigated, and while a single circumstance, standing alone, may appear to be entirely immaterial and irrelevant, it frequently happens that the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion. <u>Where the inquiry is as to the state of one's mind at a particular time, his statements and declarations indicating his state of mind are generally admissible</u>. . . . Whether called part of the <u>res</u> <u>gestae</u> or not is immaterial. Instead of withholding any available information by the application of rigid rules of exclusion, the "more excellent way" is to admit all testimony which will enlighten the triers of fact in their quest for the truth. The better view is, not how little, but how much logically competent evidence is admissible.

<u>Karnes v. Commonwealth</u>, 125 Va. 758, 764-65, 99 S.E. 562, 564-65 (1919) (emphasis added). Here, the Commonwealth was required to prove that appellant had attempted to extort monies from the victim by threatening that he would kill him, and that in the course of that attempt, he murdered him. We hold that the evidence was relevant, admissible and related to an issue before the trial court.

IV.  Sufficiency of the Evidence

A.  Attempted Extortion and Felony Murder

Appellant asserts that because he had a <u>bona</u> <u>fide</u> claim of right to the money he was seeking to collect from the victim he

- 14 -

could not be convicted of extortion.  We disagree.  See United

States v. Teplin, 775 F.2d 1261 (4th Cir. 1985) (a claim of right

is not a defense to extortion in Virginia).

> In Virginia, extortion has been defined as follows:
> "To gain by wrongful methods; to obtain in an
> unlawful manner, as to compel payments by
> means of threats of injury to person,
> property, or reputation.  To exact something
> wrongfully by threats or putting in fear."

Stein v. Commonwealth, 12 Va. App. 65, 69, 402 S.E.2d 238, 241

(1991) (quoting Black's Law Dictionary 525 (6th ed. 1990)).  As

the above definition demonstrates, the gravamen of extortion is

wrongfully obtaining a benefit through coercion.

> A person whose property has been stolen[, or
> wrongfully withheld,] cannot claim the right
> to punish the [wrongdoer] himself without
> process of law, and to make him compensate
> him for the loss of his property by
> maliciously threatening to . . . do an injury
> to his person or property with intent to
> extort property from him.

Woodward v. Alaska, 855 P.2d 423, 425 (Alaska 1993) (citing State

v. Bruce, 24 Me. 71 (1844)).

While a bona fide claim of right may be a valid defense to a

charge of robbery or larceny in Virginia, Pierce v. Commonwealth,

205 Va. 528, 533, 138 S.E.2d 28, 31-32 (1964); Butts v.

Commonwealth, 145 Va. 800, 811-13, 135 S.E. 764, 767-68 (1926),

the same is not true for extortion.  With respect to the crimes

of robbery and larceny, a bona fide claim of right could be a

defense because it negates the criminal intent necessary to

sustain those offenses, that is, the intent to steal.  Id.  An

- 15 -

intent to steal is not, however, an element of extortion.  Thus, appellant's alleged claim of right to the money he sought to obtain from the victim provides no defense.  Accordingly, we hold that the evidence is sufficient to support the judgment of the trial court.

### B.  Use of a Firearm

On August 5, 1991, two indictments were presented against appellant.  Count I of the first indictment charged appellant with first degree murder, in violation of Code § 18.2-32.  Count II of that indictment charged appellant with use of a firearm while committing or attempting to commit murder, in violation of Code § 18.2-53.1.  The second indictment brought that day charged appellant with attempted extortion and felony murder but did not include a count for use of a firearm.  After hearing all of the evidence, the trial court acquitted appellant of murder in violation of Code § 18.2-32, as alleged in Count I of the first indictment, but found appellant guilty of use of a firearm in the commission of a <u>felony</u>.  In making that finding, the trial court said:

> What I'm going to do today, Mr. Strohecker, is find you guilty of murder while attempting to commit extortion, felony murder, murder in the second degree.

Appellant argues that because the trial court acquitted him of the murder charge used as the predicate offense in the first indictment to support the use of a firearm charge, it erred when it used the murder charge in the second indictment as the

predicate offense to support the firearm charge. We disagree. The cases cited by appellant are inapposite.

As in Wolfe v. Commonwealth, 6 Va. App. 640, 371 S.E.2d 314 (1988), this case must be analyzed and resolved in the procedural context in which the issue arose. Here, as in Wolfe, appellant was tried without objection on both indictments in a single criminal trial on two distinct murder charges together with use of a firearm in the commission of murder. Nothing in the record shows that any evidence presented was limited to a particular indictment.

In Davis v. Commonwealth, 4 Va. App. 27, 353 S.E.2d 905 (1987), the defendant was tried and convicted on a single indictment that charged only that he used a firearm in the commission of murder. We held that indictment, standing alone, was sufficient so long as the proof of a predicate murder was made to support the conviction. In the case before us, there is sufficient evidence of the necessary predicate offense, to wit, that appellant did kill and murder the victim while attempting to unlawfully extort money from him. For that reason, we affirm the firearm conviction.

## V. Impeachment Testimony

At trial, appellant sought to elicit testimony concerning the victim's reputation for truthfulness. The Commonwealth objected on the ground of relevance. The trial court sustained the objection. Because appellant's counsel made no proffer of

the excluded testimony, we are unable to consider his argument.

See <u>O'Dell v. Commonwealth</u>, 234 Va. 672, 364 S.E.2d 491 (1988).

Accordingly, for the reasons stated, we affirm appellant's convictions.

<u>Affirmed.</u>