COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Elder and Bray
Argued at Chesapeake, Virginia


STEPHEN HAROLD SCHRIEBERG

MEMORANDUM OPINION* BY
v.    Record No. 1192-98-2        JUDGE LARRY G. ELDER
                                  FEBRUARY 29, 2000
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Arthur W. Sinclair, Judge Designate

Leslie Lee Robinson (Robinson & Pincus, LLP,
on brief), for appellant.

H. Elizabeth Shaffer, Assistant Attorney
General (Mark L. Earley, Attorney General, on
brief), for appellee.


Stephen Schrieberg (appellant) was convicted in a bench trial for the felony offense of uttering a bad check pursuant to Code § 18.2-181, which offense arose out of his purchase of an automobile. On appeal, he contends that the trial court erroneously admitted into evidence both the hearsay statement made by a bank employee to the automobile's salesman regarding the status of appellant's checking account and appellant's response to the salesman when told of the bank employee's statement. Appellant also contends the evidence is insufficient to prove that he had the requisite intent to defraud and

---

* Pursuant to Code § 17.1-413, recodifying Code § 17-116.010, this opinion is not designated for publication.

knowledge of insufficient funds at the time he wrote the check. We hold the trial court committed no error in admitting the bank employee's hearsay statement and appellant's response because the hearsay statement itself was not separately admitted to prove the truth of the matter asserted; the statement properly was admitted in conjunction with appellant's response to it because it constituted an adoptive admission. Finally, the only reasonable hypothesis flowing from the circumstantial evidence, viewed in the light most favorable to the Commonwealth, is that appellant lied to the automobile salesman when he said he had sufficient funds in his account to cover the $14,700 check and, therefore, that he acted with the requisite knowledge and intent when he wrote the check. For these reasons, we affirm appellant's conviction.

I.

FACTS

On Saturday, May 25, 1996, appellant purchased a used Mercedes from Pegasus Motor Car Company through General Manager Mark Viglione. Appellant traded in his older model Mercedes and wrote a check for the balance due--$14,700. The check was a corporate check of Bingo TV, Inc., of Boca Raton, Florida, and was drawn on a Florida bank. Appellant assured Viglione that "there [were] funds in the account and that it was a good check." In the course of the purchase, appellant gave an address in Richmond as his home address.

-

On Monday, May 27, Viglione delivered the check to Pegasus' business office, and on June 3, Viglione received the check back again. Viglione called appellant at the business number listed on the check, and when appellant returned the call, he told Viglione "that he had deposited a rather large check into that account and it hadn't cleared yet, so it was going to be a few days yet" before his account would contain sufficient funds to cover the check. For about two or three weeks thereafter, Viglione phoned the bank on a daily basis to determine whether the account contained sufficient funds and, upon learning that it did not, Viglione called appellant. On each of those occasions, appellant provided the same explanation for why the account still contained insufficient funds. Eventually, the business phone number Viglione had been calling was disconnected, and Viglione attempted to make contact with appellant through appellant's father.

Viglione eventually talked with a bank employee about the status of appellant's account and communicated to appellant what he had been told. Viglione testified in relevant part as follows:

> [PROSECUTOR]: Okay. So you confronted [appellant] and what specific question did you ask about this large check deposit that you believed now to be nonexistent, what did you ask--
>
> [VIGLIONE]: I said that I had talked to somebody at his bank and they told me there wasn't a check--

-

       *       *       *       *       *       *       *

> [VIGLIONE]: I told him that I had talked to his bank and they told me that there in fact wasn't a check deposited there that was going to clear, that the . . . the funds weren't there. He at that point told me that he was making other arrangements.

Viglione confirmed that appellant never refuted the allegations.

Appellant told Viglione that he was in California at that time but that he would be back in Richmond in about a week. About a week later, appellant called Viglione and reported that he was still in California but would wire Viglione the money. Appellant did not wire the money. In late August 1996, almost three months after appellant took possession of the car, appellant's father paid Viglione the outstanding balance.

Appellant testified at trial, claiming that three to seven days before he wrote the check for the car, he had deposited into his business account a check for $50,000 drawn on a New Jersey account. He was unable to produce a deposit slip or account statement documenting that deposit. He said he had no knowledge when he wrote the check to Pegasus that the balance in his business account was not $50,000 and that he "was sure" the account contained sufficient funds because he expected the check to clear by that date, but he also admitted that, at the time he made the deposit, he "thought it would take . . . three to five days" for the check to clear. He contended that after Viglione informed him that the account contained insufficient funds, he

-

attempted to investigate and learned that an employee of his corporation had taken funds out of the account. He also said he had no recollection of Viglione's telling him a bank employee said that deposit was never made.

At the conclusion of the evidence, the trial court held "the credible evidence support[ed] the Commonwealth's position" and convicted appellant of the charged offense.

II.

ANALYSIS

A.

ADMISSIBILITY OF EVIDENCE

Appellant contends the trial court erroneously admitted as an adoptive admission the hearsay statements of a bank official that appellant had not deposited a check into his account and appellant's response when told of that statement. We disagree.

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988).

A statement qualifies as an adoptive admission and may be admissible into evidence despite the hearsay rule, under certain well-defined circumstances, if the statement has been adopted, either expressly or impliedly, by a criminal defendant. See 2 Charles E. Friend, The Law of Evidence in Virginia § 18-45 (4th

-

ed. 1993 & Supp. 1998).  "[B]oth the statement and the fact of the accused's failure to deny the statement are admissible in a criminal proceeding against the accused."  Strohecker v. Commonwealth, 23 Va. App. 242, 252, 475 S.E.2d 844, 849 (1996).  "'An adoptive admission avoids the confrontation problem because the words of the hearsay become the words of the defendant.'"  Id. at 253, 475 S.E.2d at 850 (quoting 29A Am. Jur. 2d Evidence § 802 (1994)).

In determining whether a statement constitutes an adoptive admission,

> the courts have evolved a variety of safeguarding requirements against misuse, of which the following are illustrative.  (1) The statement must have been heard by the party claimed to have acquiesced.  (2) It must have been understood by him.  (3) The subject matter must have been within his knowledge.  (4) Physical or emotional impediment to responding must not be present.  (5) The personal makeup of the speaker, e.g., young child, or his relationship to the party or the event, e.g., bystander, may be such as to make it reasonable to expect denial.  (6) Probably most important of all, the statement itself must be such as would, if untrue, call for a denial under the circumstances. . . .  The essential inquiry in each case is whether a reasonable person would have denied under the circumstances, with answers not lending themselves readily to mechanical formulations.

Edward W. Cleary, McCormick on Evidence § 270, at 800-01 (3d ed. 1984), quoted with approval in Knick v. Commonwealth, 15 Va. App. 103, 107, 421 S.E.2d 479, 481 (1992).

-

Here, the evidence supports a finding that all the requirements for an adoptive admission were met, and we hold the trial court did not abuse its discretion in admitting the bank employee's statement and appellant's response.  First, the evidence establishes that appellant heard the statement of the bank employee, as reported to him by Viglione, that "there wasn't a check."  Second, it establishes that appellant understood the statement because he responded to it by saying he would make other arrangements to complete payment.  Third, the subject matter was plainly within his knowledge because he and Viglione were discussing the status of a check appellant claimed personally to have deposited in his corporate bank account.  Fourth, the record contains no indication that appellant had any physical or emotional impediment to responding to the statement.  Fifth, the record also contains no indication that appellant's personal makeup was such as to make it unreasonable to expect a denial; at the time of the purchase, appellant was an adult in his early fifties, operated his own company, and had twenty-five to thirty years of business experience.  Finally, the statement was of the type that would, if untrue, call for a denial because it accused appellant of lying repeatedly to Viglione by telling Viglione he had deposited a large check which would soon clear

-

his account, and it implicated appellant in the crime for which he was convicted.[1]

For these reasons, we hold the trial court did not abuse its discretion in admitting into evidence as an adoptive admission the bank employee's statement regarding the status of appellant's account and appellant's failure to deny that statement.

B.

SUFFICIENCY OF EVIDENCE TO PROVE INTENT AND KNOWLEDGE

Code § 18.2-181 provides in relevant part as follows:

> Any person who, with intent to defraud, shall make or draw or utter or deliver any check . . . upon any bank . . . knowing, at the time of such making, drawing, uttering or delivering, that the maker or drawer has not sufficient funds in, or credit with, such bank . . . for the payment of such check, . . . although no express representation is made in reference thereto, shall be guilty of larceny; and, if this check . . . has a represented value of $200 or more, such person shall be guilty of a Class 6 felony.

This statute requires the Commonwealth to prove both intent to defraud and knowledge of insufficient funds in order to convict

---

[1] Citing Owens v. Commonwealth, 186 Va. 689, 43 S.E.2d 895 (1947), appellant claims that the rule requires the statement to be one "tending to incriminate [the] one accused of committing a crime." He contends the statement at issue here was insufficient to meet this test. Assuming without deciding the rule requires the statement to implicate one in a crime, the statement appellant failed to refute did, in fact, implicate him in the crime for which he was convicted.

-

a defendant.[2]  See Huntt v. Commonwealth, 212 Va. 737, 739-40,
187 S.E.2d 183, 185-86 (1972).  The intent dispositive of the
crime is the intent that existed when the check was uttered.
However, subsequent acts of the accused are relevant to
establish the intent of the accused at the time the check was
uttered.  See Rosser v. Commonwealth, 192 Va. 813, 817, 66
S.E.2d 851, 853 (1951).

Knowledge or intent, like any element of a crime, may be
proved by circumstantial evidence as long as that evidence
excludes all reasonable hypotheses of innocence flowing from it.
See Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759
(1980); Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433
S.E.2d 27, 29 (1993).

Under familiar principles of appellate review, we examine
the evidence in the light most favorable to the Commonwealth,
granting to it all reasonable inferences fairly deducible
therefrom.  See Martin v. Commonwealth, 4 Va. App. 438, 443, 358
S.E.2d 415, 418 (1987).  The credibility of a witness, the
weight accorded the testimony, and the inferences to be drawn
from proven facts are matters solely for the fact finder's

---

[2] Code § 18.2-183 provides a rebuttable presumption that a
defendant acted with both requisite mental states if he fails,
within a certain period following actual or constructive written
notice of the dishonor, to pay the amount due, including any
interest and protest fees.  The Commonwealth correctly conceded
at trial that the statutory presumption does not apply in this
case.

-

determination. See Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989). The fact finder is not required to believe all aspects of a witness' testimony; it may accept some parts as believable and reject other parts as implausible. See Pugliese v. Commonwealth, 16 Va. App. 82, 92, 428 S.E.2d 16, 24 (1993).

Here, the evidence establishes that appellant assured Viglione he had sufficient funds in his corporate account to cover the $14,700 check. Appellant testified at trial that he believed he had sufficient funds in the account because he had deposited into the account a $50,000 check. However, he also admitted that he could have deposited the $50,000 check as few as three days prior to writing the check for the car and that he thought when he deposited the out-of-state check that it could take three to five days to clear. As a result, the trial court was entitled to reject appellant's testimony that he believed his account contained sufficient funds and to conclude that appellant knew when he wrote the check for the car that the $50,000 out-of-state check he allegedly deposited had not yet cleared.

Further, other evidence allowed the trial court to conclude that appellant never deposited any such check, also supporting the finding that he knew the account contained insufficient funds and that he acted with an intent to defraud when he wrote the check. When Viglione received the check back and learned

-

that appellant's account did not contain sufficient funds to cover the check, he called appellant's business number, and appellant claimed he had deposited a large check into the account and was merely waiting for it to clear. Appellant gave Viglione this same information repeatedly over the course of several weeks. When Viglione confronted appellant with information he obtained from the bank that no large check had been deposited, appellant did not contend otherwise and simply stated that he would make other arrangements to pay the outstanding balance. Appellant led Viglione to believe he would be returning to Richmond shortly thereafter but still had not returned a week later. Appellant then told Viglione he would wire the money. He even asked Viglione for the business' account information in order to complete the wire transfer, but he never wired the money. At some point during the process, appellant's business phone was disconnected, and Viglione attempted to contact appellant through his father. Appellant never made payment, and about three months after appellant received the car, his father made payment in full.

The only reasonable hypothesis flowing from all the evidence, viewed in the light most favorable to the Commonwealth, is that when appellant delivered the $14,700 check to Viglione, he acted with both an intent to defraud and knowledge that the account contained insufficient funds.

For these reasons, we affirm appellant's conviction.

Affirmed.