UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker,* Judges Humphreys and Russell
Argued at Arlington, Virginia

JAMES HUBERT PORTER

                                     MEMORANDUM OPINION** BY
v.      Record No. 0427-18-4          CHIEF JUDGE MARLA GRAFF DECKER
                                          JANUARY 15, 2019

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF WARREN COUNTY
Ronald L. Napier, Judge[1]

D. Eric Wiseley (Struckmann, White & Wiseley, PC, on briefs), for
appellant.

Katherine Quinlan Adelfio, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


James Hubert Porter appeals the revocation of his suspended sentence. He argues that the

circuit court erred by admitting certain verbal and written evidence. After reviewing the record, we

conclude that the out-of-court verbal statement was non-testimonial. In addition, any error in

admitting the written statement was harmless. For the reasons that follow, we affirm the decision of

the circuit court.

I. BACKGROUND

The appellant's original sentence resulted from a 1997 conviction for rape. He was released

on probation on July 18, 2017. The following October, while on probation, the Department of

---

\* On January 1, 2019, Judge Decker succeeded Judge Huff as chief judge.

\*\* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] While the final order in this case was signed by Judge Napier, the Honorable Clifford L.
Athey, Jr., presided over the proceedings addressed in this opinion.

Corrections rented a motel room for the appellant because he was homeless. A term of the "sex offender motel contract" required that he "abide by a curfew of 11:00 pm and have no visitors, alcohol, or drugs in the room."

Jacie Poe, the appellant's probation officer, alleged that he violated the terms of his probation by having another person stay in his room overnight. At the resulting revocation hearing, Poe was the sole witness. She testified that a woman accompanied the appellant to his first probation meeting with Poe. Poe explained that during the meeting she told the appellant that he needed to "re-register" with the local police department. When he said that he did not know where the police department was located, Poe volunteered to talk to "his friend." The appellant replied that "she was not from here." Poe told him that she would give both of them directions. Poe approached the woman, introduced herself, and "asked her where she was from." When the woman, Emily Morin, responded that she was from Fredericksburg, Poe asked her where she was staying. Morin said that she had been "staying with" the appellant. The woman also told Poe that she was homeless and did not have an address or a phone number.

The appellant objected to Poe's testimony about Morin's statement that she was staying with the appellant on the grounds of "confrontation and hearsay." The Commonwealth responded that hearsay was admissible in a probation violation proceeding. The parties dispute the court's ruling on this objection, as discussed *infra*.

The Commonwealth entered into evidence a typed statement on Department of Corrections letterhead. The statement was dated October 24, 2017, and provided: "I, Emily Morin, have been staying at the Blue Ridge Motel . . . with [the appellant] since Sunday October 22, 2017." The document bore signatures in the names of Emily Morin and the probation officer. The appellant objected to the admissibility of the writing "on [c]onstitutional and hearsay grounds." Again, the

Commonwealth responded that hearsay was admissible. The circuit court admitted the written statement into evidence.

The circuit court found that the appellant violated "the terms and conditions of [his] probation." The sentencing guidelines recommended a sentence of two to three years, in part due to the appellant's previous three or more probation violations. However, the court revoked six months of the previously suspended sentence and re-suspended any remaining sentences.

## II. ANALYSIS

The appellant argues that the circuit court erred by admitting the evidence at his revocation hearing indicating that Morin had stayed with him overnight in his motel room.

### A. Evidence Before This Court on Appeal

The parties disagree on whether the circuit court admitted Poe's testimony about Morin's verbal statement as substantive evidence of the truth of the matter asserted. The appellant suggests that the court listened to Poe's testimony about the circumstances surrounding Morin's statement, including what Morin told Poe, for the limited purpose of deciding whether to admit the written statement. The Commonwealth counters that the testimony was admitted as substantive evidence that the appellant violated a condition of his probation.

When Poe testified about her meeting with the appellant, the Commonwealth asked her to read aloud the assertion in the "Major Violation Report" that "[t]he female had been staying with" the appellant. The appellant objected to the statement as hearsay. The circuit court ruled that Poe could testify to what she wrote in the probation report. The appellant again objected that the statement was hearsay because it was information told to Poe by an out-of-court asserter. The court sustained the objection but allowed Poe to testify to "the conclusion she reached" based on her conversation with the woman.

The appellant objected again based on the rule against hearsay and his right to confront witnesses. The appellant explained that the Commonwealth's case against him was based solely on a statement made by a witness who was not present at the hearing. The circuit court observed that the Commonwealth had not yet entered the written statement into evidence. The court also reiterated that it had "sustained the objection *at this point*." (Emphasis added).

The Commonwealth then questioned Poe about her meeting with the appellant.

> Q . . . . You went out and talked to this woman in the lobby after you discussed this, her appearance with Mr. Porter.
>
> A I discussed her appearance with Mr. Porter with Mr. Porter present.
>
> Q Okay. And Mr. Porter told you what about her?
>
> A That she was a friend that he had met on the street.
>
> Q Okay. And what else did he tell you about her, if anything?
>
> A He didn't know where she was living.
>
> Q Okay. All right. So based on your conversation with Mr. Porter what did you do then?
>
> A One of the things I instructed Mr. Porter to do was to go back down to the Front Royal Police Department to re-register. He said he did not know where it was located. So I told him that I would talk to his friend who came with him and he said that she was not from here. I said okay, well I will give you guys both directions. When I went out there I introduced myself to her and asked her where she was from and she said she was from Fredericksburg.
>
> [The appellant]: Objection.
>
> [Prosecutor]: This is not going to the truth of the matter as yet, Judge.
>
> THE COURT: Yeah. Right. That is not . . .
>
> [The prosecutor]: Go ahead.
>
> A That she was . . .

- 4 -

[The appellant]:  Objection to the truth of the matter, Your Honor.

THE COURT:  That one is overruled.

THE WITNESS:  That she was from Fredericksburg and I asked where she had been staying and she said that she had been staying with Mr. Porter.

[The appellant]:  Continuing objection.

Q  And did you have her write out any kind of a statement or anything?

A  I did.

The appellant objected to the written statement.  With the appellant's objection continuing, Poe again summarized their conversation:  "She was homeless.  She had [come] from Fredericksburg with a friend and that friend had left her and that is how she ended up in the motel room with [the appellant]."  The circuit court ruled, "I am going to admit it into evidence," noting that in "a probation revocation proceeding . . . hearsay is admissible."

The transcript, viewed in its entirety, reflects that the circuit court reserved judgment on the admission of Poe's testimony regarding where Morin was staying until it heard all the circumstances surrounding the statements.  See, e.g., Henderson v. Commonwealth, 285 Va. 318, 328-29 (2013) (noting that when considering the admission of hearsay testimony, the court may "admit[] the evidence conditionally, subject to strik[e] . . . if it fails to meet the appropriate test").  After the arguments by counsel and the witness' explanation of the context and manner in which the information came to her attention, the circuit court admitted the evidence regarding Poe's

conversation with Morin and Morin's written statement collectively.[2]  It is not dispositive that the court did not explicitly say that it was admitting both the verbal and written statements.  Supporting this interpretation of the record is the circuit court's commentary, which did not differentiate between Morin's verbal statement to Poe and her written one.  Consequently, we review the admission of the verbal statement as well as the written statement.

## B.  Verbal Statement[3]

An appellate court reviews evidence admitted in a revocation hearing "in the light most favorable to the Commonwealth, as the prevailing party, including all reasonable and legitimate inferences that may properly be drawn from it."  Henderson, 285 Va. at 329.  Generally, the proponent of evidence bears the burden of demonstrating its admissibility.  Holloman v. Commonwealth, 65 Va. App. 147, 168 (2015).  A determination regarding the relevance and admissibility of evidence in a revocation proceeding is ordinarily reviewed for an abuse of discretion.  Henderson, 285 Va. at 329.  However, in reviewing the admission of an out-of-court statement in a revocation proceeding for a constitutional due process challenge, we "accept[] the historical facts" and "apply a *de novo* review" to determine whether the record supports admitting the challenged evidence as a matter of law.  Id.; see also Caison v. Commonwealth, 52 Va. App. 423, 434 (2008) ("Although we will not disturb on appeal decisions regarding the admissibility of evidence absent an abuse of the trial court's discretion, we review *de novo* whether a particular

---

[2] To the extent that the appellant argues that the circuit court admitted the testimony about the verbal statement for a limited purpose not including whether he allowed Morin to stay overnight in his motel room, it was the appellant's burden to obtain a clear ruling to that effect from the circuit court.  See Schwartz v. Commonwealth, 41 Va. App. 61, 71 (2003) (recognizing that when a party fails to obtain a ruling on a matter presented to a trial court, there is "no ruling [for the appellate court] to review on appeal").  Contrary to the appellant's contention, the record does not reflect that the testimony was admitted for a limited purpose.

[3] We assume, without deciding, that the appellant's brief encompasses a challenge to the admission of the verbal statement.  See generally Rule 5A:20 (listing the requirements for an appellant's opening brief).

category of proffered evidence is 'testimonial hearsay.'" (citation omitted) (quoting Jasper v. Commonwealth, 49 Va. App. 749, 755 (2007))).

Although hearsay evidence is generally admissible in a revocation hearing, the Due Process Clause of the Fourteenth Amendment guarantees a defendant in a revocation hearing some ability to cross-examine adverse witnesses. See Henderson, 285 Va. at 326 (noting that "[h]earsay is frequently admitted in revocation proceedings"); Turner v. Commonwealth, 278 Va. 739, 742 (2009) (holding that only "demonstrably reliable" hearsay is admissible in a probation revocation hearing (quoting United States v. McCallum, 677 F.2d 1024, 1026 (4th Cir. 1982))). In the context of the instant proceeding and the challenged statement here, the admission of hearsay is subject to a confrontation challenge only if it is testimonial in nature.[4] See Henderson, 285 Va. at 326.

A hearsay statement is testimonial when it results from an "interrogation," the "primary purpose" of which "is to establish or prove past events potentially relevant to later criminal prosecution." Davis v. Washington, 547 U.S. 813, 822 (2006).

In determining whether a statement is testimonial, "we objectively evaluate the circumstances in which the encounter occur[ed] and the statements and actions of the parties." Holloman, 65 Va. App. at 170 (alteration in original) (quoting Michigan v. Bryant, 562 U.S. 344, 359 (2011)). In doing so, the Court "look[s] to all of the relevant circumstances." Id. (alteration in original) (quoting Bryant, 562 U.S. at 369). Therefore, we review the entire context in which Morin made the verbal statement to Probation Officer Poe.

Poe testified about the circumstances in which Morin told her that she was staying with the appellant. The record establishes that the two spoke during the appellant's first appointment with

---

[4] Even if it is testimonial hearsay, it is admissible during a revocation proceeding when "the hearing body specifically finds good cause for not allowing confrontation." Johnson v. Commonwealth, __ Va. __, __ (Oct. 18, 2018) (quoting Black v. Romano, 471 U.S. 606, 612 (1985)). However, when hearsay is not testimonial in the first place, the court does not need to conduct a good cause analysis.

Poe. The probation officer explained that she told the appellant that he needed to "re-register" with the Front Royal Police Department. When the appellant said that he did not know where the police department was located, Poe said that she "would talk to his friend." The appellant replied that "she was not from here." Poe told him that she would give both of them directions. Poe approached Morin, introduced herself, and "asked her where she was from." When Morin responded Fredericksburg, Poe asked her where she was staying. Morin responded that she had been "staying with" the appellant.

The appellant argues that the evidence demonstrated that Poe obtained Morin's statement during an investigation of possible probation violations. He suggests that the nature of Poe's employment as a probation officer, her supervisory role over him, and his history of "technical" violations necessarily signify that Poe was "looking for reasons to violate." This argument, however, neglects to frame the evidence in the light most favorable to the Commonwealth. See Henderson, 285 Va. at 329.

Viewing the evidence in the light most favorable to the Commonwealth, Poe elicited Morin's verbal statement in the course of trying to ascertain Morin's familiarity with the area in order to give her directions, not in the course of investigating a possible probation violation by the appellant. Poe testified that she sought to give "both" the appellant and Morin directions to the local police department. She was attempting to provide directions to someone who did not live in the area. In order to do so, Poe was trying to gauge Morin's familiarity with the area. This was all in an effort to get the appellant to the local police department so that he could register as he was required to do. Consequently, the evidence of Morin's verbal statement to Poe is non-testimonial hearsay

and met the threshold for admissibility.[5] The circuit court did not err by allowing into evidence Poe's testimony about Morin's part of the conversation that revealed that she was actually staying with the appellant.

## C. Written Statement

Based on the record, we need not decide the more complex question of whether the trial court erred in admitting Morin's written statement because any presumed error committed as a result of its admission is clearly harmless. See Commonwealth v. White, 293 Va. 411, 419-20 (2017). "[T]he General Assembly 'deliberately engrafted' the harmless-error doctrine into the statutory law of the Commonwealth." Id. at 420 (quoting Irvine v. Carr, 163 Va. 662, 669 (1934)); see Code § 8.01-678. Consequently, "it is 'the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless.'"[6] White, 293 Va. at 420 (quoting United States v. Hasting, 461 U.S. 499, 509 (1983)).

A constitutional error, such as one involving a violation of due process, is harmless only if the appellate court is "able to declare a belief that it was harmless beyond a reasonable doubt." Chapman v. California, 386 U.S. 18, 24 (1967); see Clay v. Commonwealth, 262 Va. 253, 259 (2001). Harmless error review is not "simply a sufficiency of the evidence analysis." Williams v. Commonwealth, 32 Va. App. 395, 400 (2000) (*en banc*) (quoting Hooker v. Commonwealth, 14

---

[5] As non-testimonial hearsay, we do not reach the issue of whether good cause supported the admission of the verbal statement. See generally Kirby v. Commonwealth, 50 Va. App. 691, 698 n.2 (2007) (holding that an appellate court must "decide cases 'on the best and narrowest ground'" (quoting Miles v. Commonwealth, 274 Va. 1, 2 (2007) (Kinser, J., concurring))).

[6] The due process right to confront a witness during a revocation hearing is not one of the bedrock constitutional rights exempt from harmless error review. See United States v. Verduzco, 330 F.3d 1182, 1184 (9th Cir. 2003) ("A due process violation at a revocation proceeding is subject to harmless error analysis." (quoting United States v. Daniel, 209 F.3d 1091, 1094 (9th Cir.), amended by 216 F.3d 1201 (9th Cir. 2000))). See generally Chapman v. California, 386 U.S. 18, 23 (1967) ("[T]here are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error.").

Va. App. 454, 458 (1992)).  Therefore, an error does not affect the conviction only if the record makes "clear beyond a reasonable doubt that a rational [factfinder] *would have* found the defendant guilty absent the error."  White, 293 Va. at 422 (quoting Neder v. United States, 527 U.S. 1, 18 (1999)).

Factors relevant to whether an error was harmless include "the importance" of the erroneously admitted evidence "in the prosecution's case, whether [the evidence] was cumulative, the presence or absence of evidence corroborating or contradicting the [disputed evidence] on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case."  Dearing v. Commonwealth, 260 Va. 671, 673 (2000) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986)).

Here, the written statement was merely cumulative of Poe's testimony, clearly credited by the circuit court, that Morin told her that she had stayed with the appellant.  See, e.g., Dalton v. Commonwealth, 64 Va. App. 512, 520 (2015) (holding that the content of challenged evidence was cumulative of other evidence admitted at trial).  Accordingly, we hold that any error committed in admitting the written statement was harmless beyond a reasonable doubt.

III.  CONCLUSION

Viewing the record in the light most favorable to the Commonwealth, the verbal statement was non-testimonial hearsay.  Consequently, the circuit court did not err by admitting the verbal

statement of Morin into evidence.[7]  In addition, the admission of the written statement, if error, was

harmless.  Accordingly, we affirm the judgment of the circuit court.

Affirmed.

---

[7] In light of our conclusion regarding the admissibility of the verbal statement, we do not reach the appellant's third assignment of error that the circuit court "erred in relying solely on inadmissible hearsay evidence to support a violation of probation."  He cites Rushing v. Commonwealth, 284 Va. 270, 278-79 (2012), in support of the proposition that this Court should reverse and dismiss the case.  We note, however, that Code § 19.2-324.1 abrogated the holding in Rushing.

Russell, J., concurring, in part, and dissenting, in part.

Although I agree with much of the majority opinion and join it in almost all respects, I disagree on one fundamental issue—whether Morin's verbal statement was testimonial. For the reasons stated below I conclude that, like her subsequent written statement, Morin's verbal statement was testimonial, and thus, disagree with my colleagues' conclusion that her verbal statement was non-testimonial. Accordingly, I respectfully dissent.[8]

The majority correctly states the test for determining whether Morin's verbal statement was testimonial. Supra at 7. Her statement was testimonial if the "primary purpose" of Poe's questions to Morin was "to establish or prove past events potentially relevant to later" proceedings. Davis v. Washington, 547 U.S. 813, 822 (2006). In making this determination, we conduct an objective review of the circumstances leading to the statement, the statement itself, and the actions of the parties. Holloman v. Commonwealth, 65 Va. App. 147, 170 (2015).

Here, the circumstances were that Poe, appellant's probation officer, was meeting with appellant for the first time since he had returned to Front Royal for supervision by her office.[9] Although probation officers undoubtedly care about the rehabilitation and general well-being of their charges, the overriding purpose of such a meeting is for the probation officer to ascertain whether the probationer is complying with the conditions of probation. Thus, we review the interactions at issue here with that understanding.

_____

[8] Despite my general agreement with my colleagues on the other issues raised by the parties, my conclusion regarding Morin's verbal statement requires me to disagree with them regarding the appropriate disposition of the case. As explained more fully below, I conclude that the case should be remanded for further proceedings.

[9] After his release from incarceration, appellant initially was admitted to a residential program located in Henrico County. Once he completed that program, he had no place to stay. Pursuant to the relevant regulations, he was returned to Warren County, the location of his underlying conviction, where he was to be supervised by the District 11 Probation and Parole Office.

Poe testified that, prior to having any interaction with Morin, she had been told that Morin was not from the area. Poe testified that, knowing this, she decided to give directions to the police station to both appellant and Morin. However, by her own account, Poe did not provide directions when she approached Morin. Rather, after confirming that Morin was not from the area, Poe asked her where she was staying, a topic that has little, if any, direct bearing on where the local police station is located. However, given that Morin was from out of town and had accompanied appellant to the meeting with his probation officer, it certainly had the potential to bear upon whether appellant had violated one of the terms of his probation by allowing Morin to stay with him.

Correctly noting that we must view "the evidence in the light most favorable to the Commonwealth," the majority concludes that Poe must have asked where Morin was staying in order "to ascertain Morin's familiarity with the area in order to give her directions[.]" Supra at 8. It reaches this conclusion despite the record containing no evidence that Poe ever provided anyone directions of any kind. Additionally, Poe never made any statement suggesting that she asked where Morin was staying to determine her familiarity with local landmarks that might have been part of the never given directions. In short, the majority reaches its conclusion by drawing an inference—that Poe must have asked where Morin was staying to aid in giving directions.

Although, as the prevailing party below, the Commonwealth is entitled to all reasonable inferences that flow from the evidence, the inference must actually flow from the evidence. See Bennett v. Commonwealth, 69 Va. App. 475, 491 (2018) (noting that the prevailing party is entitled to "reasonable inferences *fairly* deducible" from the evidence (emphasis added)). Absent some actual attempt by Poe to provide directions or any indication that she inquired about where Morin was staying to assist in giving directions, the inference drawn by the majority requires speculation not supported by the underlying circumstances and, in my view, is a bridge too far. Given the function of a probation officer, the purpose of the meeting as discussed above, and Poe

knowing that Morin was not from the area, concluding that the question was asked because its answer might reveal a probation violation requires no such speculation. Accordingly, I respectfully disagree with my colleagues that the inference they have drawn from this record is reasonable, and therefore, I conclude that the statement was testimonial.

This conclusion, however, does not render the statement inadmissible. From this record, a reasonable factfinder could conclude that the appellant was present when Morin made the statement and adopted the statement as his own, rendering it admissible as an admission of appellant. See Lynch v. Commonwealth, 272 Va. 204, 208-09 (2006) (discussing adoptive admissions); Va. R. Evid. 2:803(0)(B).[10] Alternatively, even if Morin's statement is not an adoptive admission of appellant, it may have been admissible in a probation revocation proceeding if the trial court found good cause under the circumstances for dispensing with the limited right to confrontation applicable in such proceedings. See, e.g., Johnson v. Commonwealth, ___ Va. ___, ___ (Oct. 18, 2018); Henderson v. Commonwealth, 285 Va. 318, 326 (2013).

Although both avenues of admissibility are *possible* from this record, I believe the record is insufficiently developed to allow us to conclude that the trial court made the necessary findings to support either path to admission of Morin's verbal statement. Accordingly, we

---

[10] Although not all hearsay exceptions satisfy issues related to confrontation, see Crawford v. Washington, 541 U.S. 36, 60 (2004) (rejecting the view that the Sixth Amendment right to confrontation is satisfied if the statement falls within a well-recognized hearsay exception), an admission of a party, whether actual or adoptive, does. As we previously have noted, "[a]n adoptive admission avoids the confrontation problem because the words of the hearsay become the words of the defendant." Strohecker v. Commonwealth, 23 Va. App. 242, 254 (1996) (quoting 29A Am. Jur. 2d Evidence § 802 (1994)). Strohecker involved the Sixth Amendment's confrontation clause as opposed to the confrontation right found in the Fourteenth Amendment's due process clause. Because the Fourteenth Amendment protection is a "more limited right of confrontation" than that provided by the Sixth Amendment, Henderson v. Commonwealth, 285 Va. 318, 325 (2013), if the Sixth Amendment's guarantee is not implicated by an adoptive admission, logic dictates that the lesser Fourteenth Amendment right to confrontation is also not implicated by an adoptive admission.

cannot affirm on the possibility that the trial court would have made the necessary findings to support admission of Morin's verbal statement. See Blackman v. Commonwealth, 45 Va. App. 633, 642 (2005) (noting that "an appellee may argue for the first time on appeal any legal ground in support of a judgment *so long as it does not require new factual determinations*" (emphasis added)). Accordingly, I would remand the matter to the trial court for further proceedings.