## Salem

JERRY RICHARD KNICK

v.

COMMONWEALTH OF VIRGINIA

No. 1822-91-3

Decided September 22, 1992

Counsel

H. David Natkin (Natkin & Heslep, on brief), for appellant.

John H. McLees, Jr., Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

Opinion

**MOON, J.**—Jerry Richard Knick was convicted of second degree murder in the shooting death of his wife, Lisa Vincent Knick. Defendant, a deputy sheriff of Rockbridge County, claimed that in an effort to frighten her, he pulled his service revolver and pointed it at his wife, who was seated on the floor. He testified that Mrs. Knick pushed herself up from the floor with her right hand and grabbed the barrel of the gun with her left. He further testified that her actions caused him to fall forward, and, at that point, the gun discharged. As a part of the Commonwealth's case on rebuttal, defendant's ex-wife, Deborah Gibson, testified that she had, on two occasions, experienced conduct from the defendant similar to that in this case. We reverse the conviction because we find this evidence of prior bad acts was inadmissible.

The two incidents involving the ex-wife occurred when she and the defendant were separated and seeing other people. On both occasions, defendant assaulted her, pulled out his service revolver, held it to her head, and threatened to kill her. At the first incident, defendant assaulted Gibson after he followed her home from a bar. During the course of the assault, defendant pulled his service revolver and held it to her head while he threatened to kill her. On the second occasion, defendant followed Gibson home from a date. Defendant assaulted Gibson, pulled his service revolver, and held it at her head while he threatened to kill her. The defendant also threw her on the couch and choked her. Defendant's counsel objected, arguing that the probative

value of the evidence did not outweigh its prejudicial effect, and that the evidence did not tend to rebut the defendant's contention that the killing was accidental. The judge cautioned the jury that Gibson's testimony could only be considered with respect to the defendant's claim that the shooting was an accident.

We hold that the trial court erred in admitting this evidence because it did not tend to disprove defendant's contention that he accidently discharged the firearm. It merely showed that the accused was guilty of prior bad acts and that he was disposed to commit an offense similar to that charged.

■ The prior bad acts rule in Virginia is one of relevancy. One authority has described the rule as follows:

> [E]vidence which shows or tends to show the accused guilty of the commission of other offenses at other times is inadmissible if its only relevance is to show the *character of the accused* or his *disposition to commit an offense similar to that charged*; but if such evidence tends to prove *any other relevant fact* of the offense charged, and is otherwise admissible, it will not be excluded merely because it also shows him to have been guilty of another crime. . . .

> Evidence of other offenses is admitted . . . if it tends to prove any relevant element of the offense charged.

Charles E. Friend, *The Law of Evidence in Virginia* § 152(a) (3d ed. 1988). Thus, this court must decide whether the admission of evidence of the defendant's prior bad acts "tends to prove any relevant element of the offense charged."

Evidence of defendant's prior misconduct may only be properly admitted when there is a direct link between an element of the prior act and the current offense. Ms. Gibson's rebuttal evidence showed no more than on two prior occasions, defendant intentionally removed and pointed his service revolver during a domestic dispute. However, in those instances, the weapon was not discharged and, thus, there was no claim of accidental discharge. Those prior instances were not probative of the accidental discharge in this case. Without a stronger similarity of outcome between the various incidents, the jury could have gained nothing from this evidence other than the implication that defendant was a person of violent propensity. Furthermore, Gibson's testimony could not be cured by a simple limiting instruction.

■ Nor do we find this admission harmless error. In *Lavinder v. Commonwealth*, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991), this court, citing Code § 8.01-678, held that a "criminal conviction must be reversed unless 'it plainly appears from the record and the evidence given at trial that' [non-constitutional] error did not affect the verdict." Because the jury erroneously heard testimony about the defendant's prior bad acts, which included assaulting and pulling a gun on his former wife, we cannot say that it plainly appears from the record that defendant has had "a fair trial on the merits and substantial justice has been reached." Code § 8.01-678. Since the evidence admitted was not probative of the issue of accidental discharge and was highly prejudicial in that it would tend to lead the jury to believe that defendant was a violent person, the error was not harmless.

Because the case must be reheard, we also consider two other issues that arose at the trial and are likely to reoccur on remand.

Also on rebuttal, Brenda Mays testified that she was a long-time friend of Cecelia Grubb, defendant's girlfriend. Through this relationship, Mays had met the defendant one time. Mays, her husband, Grubb, and defendant had dinner at a restaurant one evening approximately four months after the homicide. They later returned to Mays' home, where a discussion arose about the homicide. The defendant said, "Yes, I did it, but I didn't do it the way they are trying to say that I did it." At trial, Mays was asked, "at *that* point what did Grubbs say." Mays answered, "[a]t *some* point," Grubb interjected that Lisa Knick caused the accident because she had "thrown her body into the gun and cause[d] it to go off." The defendant did not deny this statement and that evening neither the defendant nor Grubb ever stated that Lisa Knick grabbed the gun with her hand. Grubb did not testify at trial. Mays' testimony was admitted over the defendant's objection that Cecelia Grubb's statement was hearsay and not admissible as an adoptive admission.

■ The Virginia test regarding the use of adoptive admissions as an exception to the rule against hearsay is "whether [persons] similarly situated would have felt themselves called upon to deny the statements affecting them in the event they did not intend to express acquiescence by their failure to do so." *Owens v. Commonwealth*, 186 Va. 689, 699, 43 S.E.2d 895, 899 (1947).

In ruling on the admissibility of adoptive admissions:

the courts have evolved a variety of safeguarding requirements against misuse, of which the following are illustrative. (1) The statement must have been heard by the party claimed to have acquiesced. (2) It must have been understood by him. (3) The subject matter must have been within his knowledge. (4) Physical or emotional impediment to responding must not be present. (5) The personal makeup of the speaker . . . may be such as to make it reasonable to expect denial. (6) Probably most important of all, the statement itself must be such as would, if untrue, call for a denial under the circumstances. . . . The essential inquiry in each case is whether a reasonable person would have denied under the circumstances, with answers not lending themselves readily to mechanical formulations.[1]

Edward W. Cleary, *McCormick on Evidence* § 270, at 800-01 (3d ed. 1984).

Thus, the question is whether Grubb's statement was different from the defendant's version of how the shooting occurred, and, whether, under the circumstances, a person similarly situated would have felt compelled to deny it. The record shows that the defendant had been discussing the shooting in general terms before his paramour stated that defendant's wife "threw her body into the gun causing it to discharge." While we infer that the statement was made in the defendant's presence, we do not know from the record the other circumstances existing at the time the statement was made.

The record in this case does not establish a sufficient foundation for the admission of this statement as an adoptive admission. "[T]he essential inquiry in each case is whether a reasonable person would have denied under the circumstances, with answers not lending themselves readily to mechanical formulations." *Id.*

Mays testified that the defendant said, "Yes, I did it, but I didn't do it the way they were trying to say that I did it." "At some point" Grubb said that Lisa Knick caused the accident because she had "thrown her body into the gun and cause[d] it to go off." The defendant did not deny the statement and neither the defendant nor Grubb stated that Lisa Knick grabbed the gun with her hand.

---

[1] This quote was cited in *Weinbender v. Commonwealth*, 12 Va. App. 323, 326, 398 S.E.2d 106, 107-08 (1991). Rehearing en banc was granted and upon rehearing the Weinbender conviction was affirmed by an evenly divided court.

The record does not establish at what point Grubb interjected her version of how the event occurred. We do not know from the record whether Knick was relating how the shooting occurred and when Grubbs spoke up and supplied some missing detail that defendant adopted as to how the event occurred. We do not know what defendant was doing and what else was going on at the time. We do not know how long after Knick's statement Grubb made her statement. Since Mays was asked if "at *that* point" the statement was made, and in her response Mays changed "that point" to "some point," the doubt concerning the timing of the statement is not theoretical but arises from the evidence. We do not know to what degree defendant's attention was called to Grubb's statement. Grubb's statement did leave out the detail that the victim grabbed the gun and supplied that the victim threw her body, either event of which was an accident. We do not know sufficient detail about the circumstances surrounding Grubb's statement to hold that the record supports a finding that defendant, as a reasonable person, would have denied the statement were it not true. Accordingly, on this record, we cannot say that Grubb's statement constituted an adoptive admission by defendant that was inconsistent with his trial testimony and, thus, could be used to impeach him.

Dr. John Marraccini was a qualified defense expert in the field of clinical forensic pathology. He opined that the evidence he reviewed was consistent with Lisa Knick's hand being on the top of the gun when it discharged. Over defense counsel's objection that the defendant was being denied scientific evidence that corroborated and bolstered his case, Dr. Marraccini was not allowed to testify that the evidence was "consistent with defendant's version of the events." In a proffer of the expert's testimony, the expert did not directly testify that the death of Ms. Knick was an accident, but only that the facts of the case were consistent with defendant's statement of events. The court excluded this testimony as impermissible expert testimony on the ultimate fact in issue.

We hold the trial court did not err in excluding the expert's testimony on this point as improper opinion testimony on the ultimate fact in issue. Had the expert testified that the shooting was an accident, his testimony would have amounted to an impermissible expression of opinion on the ultimate issue of fact.

It is well settled in Virginia that an expert witness is not permitted to express an opinion as to an ultimate fact, a matter that must be determined by the trier of fact. *Llamera v. Commonwealth*, 243 Va.

262, 414 S.E.2d 597, 598 (1992); *Bond v. Commonwealth*, 226 Va. 534, 538-39, 311 S.E.2d 769, 771-72 (1984); *Cartera v. Commonwealth*, 219 Va. 516, 519, 248 S.E.2d 784, 786 (1978). The pathologist's proffered testimony was that physical and scientific evidence was consistent with defendant's theory that the shooting was accidental. This testimony would have been an opinion on the ultimate issue of fact. Therefore, the trial court did not err in excluding the expert's testimony.

With regard to the other issues raised, we assume they will not reoccur on remand, and, therefore, we do not consider them.

The judgment appealed is reversed and the case is remanded for a new trial.

*Reversed and remanded.*

Coleman, J., and Elder, J., concurred.