COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Humphreys and Senior Judge Overton
Argued at Chesapeake, Virginia


JAMES EARL BROWN
                                     MEMORANDUM OPINION[*] BY
v.    Record No. 2439-00-1       JUDGE ROBERT J. HUMPHREYS
                                          JUNE 12, 2001
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF GLOUCESTER COUNTY
                    William H. Shaw, III, Judge

          Charles E. Haden for appellant.

          Kathleen B. Martin, Assistant Attorney
          General (Mark L. Earley, Attorney General, on
          brief), for appellee.


     James Earl Brown appeals his convictions, after a bench

trial, of two counts of grand larceny, two counts of breaking and

entering with intent to commit larceny, abduction, and use of a

firearm in the commission of a felony.[1]  Brown contends that the

trial court erred in admitting a statement of Jeff Green as an

adoptive admission, and in failing to grant his motion to strike

the Commonwealth's evidence as insufficient as a matter of law.

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

     [1] Brown was also charged with robbery and use of a firearm
in the commission of robbery.  However, the trial court
dismissed these charges on the motion of Brown, finding the
evidence insufficient to support them.

The evidence presented at trial established that on April 15, 1999, at about 1:30 p.m., Dennis Emerson returned to his home and saw a blue Ford parked in his yard.  He did not see anyone in the car or at his front door, so he walked to the back of his home, where he found a young man standing on his deck.  The young man saw Emerson and asked if "Joe Eldridge" lived there.  Emerson replied that he did not.  The two then walked toward the front of the house.

As Emerson approached his garage, he looked toward his house again and saw another young man walk out of the back door, with a gun in his right hand.  Emerson then turned to the first young man and saw that he also had a gun, which he was pointing in Emerson's face.  He told Emerson to "Go back," to the deck and threatened to kill Emerson if he had seen the license plate number on his Ford.  The man then told Emerson to get down on the ground and said, "Don't you move for five minutes."  When the two men left, Emerson went into his house and called the police.

Emerson found that his house had been "completely ransacked."  The men had tried to open Emerson's safe by shooting at it.  There were bullets and shell casings on the floor.  The men had taken a five-gallon water cooler containing about $800 worth of coins, a handgun, a hunting knife and a watch.

-

Around 2:30 p.m. to 3:00 p.m. that same day, Douglas Hines returned to his home, near Route 17, to find that his home had also been burglarized. Several items, including a semiautomatic Browning 9-mm pistol had been taken.

Late that afternoon, Kimberly Harper received a page from Jeffrey Green. Green asked Harper to drive him and Brown to Green's mother's car, which he claimed had broken down. Harper picked up Green and Brown at a convenience store near Saluda and took them to a diner on Route 17. The trip took about five minutes. Green sat in the passenger seat, and Brown sat in the back. Green told Harper, "they had robbed a man and that he had held him at gunpoint," "and put him on the ground." Brown said nothing. Harper described Brown as "look[ing] like he was in shock." Green and Harper then drove Green's mother's car to Green's home. Brown followed, driving Harper's car.

At trial, a firearms and toolmark expert testified that the cartridges and jackets found at Emerson's house had come from the 9-mm that had been stolen from Hines' home. Brown stipulated that he had been in possession of that gun on April 16, 1999, the day after the burglaries. However, Emerson testified that Brown was not the young man who had held him at gunpoint and was unable to identify Brown as the second intruder. He testified, "I got enough a [sic] look at him to know that he was white. He was young. He was slender built. But to really identify him, no."

-

Brown objected to the admission of the statement made by Green to Harper, alleging that the statement was hearsay. The trial court overruled Brown's objection, finding that the statement constituted an adoptive admission on the part of Brown, an exception to the hearsay rule.

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988). "As a general rule, when a statement that tends to incriminate one accused of committing a crime is made in the presence and hearing of the accused and such statement is not denied, contradicted, or objected to by him, both the statement and the fact of the accused's failure to deny the statement are admissible in a criminal proceeding against the accused." Strohecker v. Commonwealth, 23 Va. App. 242, 252, 475 S.E.2d 844, 849 (1996).

> For the adoptive admission exception to apply, a direct accusation is not essential. Under the adoptive admission exception to the rule against hearsay, a declarant's accusatory or incriminating statements are not admitted to prove the truth of matters asserted. Such statements are admissible because they lay the foundation to show that the defendant acquiesced or admitted to the statement. An adoptive admission avoids the confrontation problem because the words of the hearsay become the words of the defendant. While the hearsay statement merely lays the foundation, the conduct of the accused, by remaining silent and failing

-

> to deny it, is admissible as substantive
> evidence to prove the accused's acquiescence
> in its truth.

Id. at 254, 475 S.E.2d at 850 (citations omitted).

"The Virginia test regarding the use of adoptive admissions as an exception to the rule against hearsay is whether [persons] similarly situated would have felt themselves called upon to deny the statements affecting them in the event they did not intend to express acquiescence by their failure to do so." Knick v. Commonwealth, 15 Va. App. 103, 106, 421 S.E.2d 479, 481 (1992) (citation omitted).

> In ruling on the admissibility of adoptive
> admissions:
>
> the courts have evolved a variety of
> safeguarding requirements against misuse, of
> which the following are illustrative. (1)
> The statement must have been heard by the
> party claimed to have acquiesced. (2) It
> must have been understood by him. (3) The
> subject matter must have been within his
> knowledge. (4) Physical or emotional
> impediment to responding must not be
> present. (5) The personal makeup of the
> speaker . . . may be such as to make it
> reasonable to expect denial. (6) Probably
> most important of all, the statement itself
> must be such as would, if untrue, call for a
> denial under the circumstances. . . . The
> essential inquiry in each case is whether a
> reasonable person would have denied under
> the circumstances, with answers not lending
> themselves readily to mechanical
> formulations.

Id. at 106-07, 421 S.E.2d at 481 (footnote omitted).

Here, although Harper, a layperson, testified that Brown appeared to be in shock, we do not find it unreasonable for the

-

trial court to have inferred that Brown heard and understood the subject matter of the statement. In fact, the Commonwealth demonstrated that Brown was able to operate and drive Harper's car, within at most, five minutes of the statement having been made. Thus, we do not find it unreasonable for the trial court to have inferred that Brown was under no physical or emotional impediment which would have kept him from either hearing, understanding, and/or responding to the statement. We therefore hold that it was reasonable for the trial court to conclude that the statement, if untrue, was such that it would have called for a denial by a reasonable person under the circumstances.

Brown next challenges the sufficiency of the evidence, alleging that the trial judge erred in refusing to grant his motion to strike. "Where the sufficiency of the evidence is challenged on appeal, that evidence must be construed in the light most favorable to the Commonwealth, giving it all reasonable inferences fairly deducible therefrom." Norman v. Commonwealth, 2 Va. App. 518, 520, 346 S.E.2d 44, 45 (1986) (citation omitted). "In so doing, we must discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." Cirios v. Commonwealth, 7 Va. App. 292, 295, 373 S.E.2d 164, 165 (1988) (citations omitted). Further, circumstantial evidence is sufficient to support a conviction,

-

provided it excludes every reasonable hypothesis of innocence.
See Tucker v. Commonwealth, 18 Va. App. 141, 143, 442 S.E.2d
419, 420 (1994).

It is well settled that, "[t]he unexplained possession of
recently stolen goods permits the fact finder to infer that the
possessor is the thief."  Archer v. Commonwealth, 26 Va. App. 1,
13, 492 S.E.2d 826, 832 (1997).  In fact, we have held that the
inference derived from evidence of recent possession of stolen
property may be enough, by itself, to support a conviction of
larceny.  See Bright v. Commonwealth, 4 Va. App. 248, 251, 356
S.E.2d 443, 444 (1987).  Accordingly, when considered in
conjunction with Brown's adoptive admission of the statement
made by Green, we do not find that the trial court was plainly
wrong in finding the circumstantial evidence sufficient to
support Brown's convictions for grand larceny, breaking and
entering, abduction and use of a firearm in the commission of a
felony.

Affirmed.