COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Fitzpatrick, Judges Felton and Kelsey
Argued at Chesapeake, Virginia


FREDERICK B. SMALLWOOD

MEMORANDUM OPINION[*] BY
v.        Record No. 3190-03-1        JUDGE WALTER S. FELTON, JR.
MAY 17, 2005

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Wilford Taylor, Jr., Judge

David B. Hargett (Hargett & Watson, PLC, on brief), for appellant.

Paul C. Galanides, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


Frederick B. Smallwood (appellant) was convicted by a jury of the first-degree murder of

his wife (Debra) and the use of a firearm in the commission of that murder.[1]  On appeal, appellant

contends the trial court erred in permitting the Commonwealth's medical examiner to testify that

Debra's fatal wound was "inconsistent with self-infliction and inconsistent with a shooting during a

struggle."  Finding no error, we affirm the judgment of the trial court.

I.

Under familiar principles of appellate review, we examine the evidence in the light most

favorable to the Commonwealth, the prevailing party below, granting to that evidence all reasonable

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] In June 1996 and March 2000 appellant was convicted by successive juries of the
murder of Debra and use of a firearm in committing that murder, and each time sentenced him to
life in prison.  This Court reversed those convictions for reasons unrelated to this appeal.  See
Smallwood v. Commonwealth, Record No. 1616-96-1, 1998 Va. App. LEXIS 101 (Feb.17,
1998), and Smallwood v. Commonwealth, 36 Va. App. 483, 553 S.E.2d 140 (2001).

inferences fairly deducible therefrom.  Turner v. Commonwealth, 259 Va. 645, 648, 529 S.E.2d 787, 789 (2000).

So viewed, the evidence established that on August 31, 1995, Debra, appellant's wife of less than three months, died from a single gunshot wound that caused massive damage to the right side of her head.  In the hours and several days following the shooting, appellant gave several statements to the police describing what occurred.  Initially he told the police that Debra was looking at his gun when it went off, then later stated that after an argument she pulled the gun from a holster on the desk, pointed it at her head and shot herself.  Appellant stated that Debra was not knowledgeable about weapons.  Still later, he told the police he thought Debra accidentally shot herself while trying to "make an impression" on him not to leave her.  Finally, following his arrest, appellant told the police that during their argument, Debra removed the pistol from its holster, initially pointed it at him, and then moved it upwardly and that the gun discharged when the muzzle was two to two and a half inches from her head, while he grasped her right arm in an attempt to prevent her from shooting herself or him.  Appellant's various statements to the police were admitted into evidence.

Prior to trial, appellant moved the trial court to prohibit Dr. Presswalla from testifying that Debra's injuries were not consistent with being self-inflicted and not consistent with an accidental injury during a struggle for the gun.  Citing Velazquez v. Commonwealth, 263 Va. 95, 104-05, 557 S.E.2d 213, 219 (2002), appellant argued that such expert opinion testimony, eliminating self-infliction and accidental death, "closed the circle," leaving for the jury "as the only possibility that [appellant] committed murder" and that any testimony along those lines would be impermissible opinion testimony on the ultimate issue reserved for the jury under Virginia law.  The trial court denied appellant's motion, stating that:

> [A]s long as [Dr. Presswalla] doesn't say that it is consistent with
> homicide, that has to be certainly the ultimate issue in this case, the

criminal culpability of the defendant, that he can opine at least as to whether it was inconsistent with self-infliction and inconsistent with a struggle, again, because it's based on his observations, his training and observations of the absence of blood spatter, and absence of blood [sic] powder residue of both the alleged victim and the defendant.

It ruled that, "Presswalla can testify as proffered. He can opine as to the inconsistencies. Certainly he cannot give an opinion on homicide or murder."

At trial, Dr. Presswalla testified, "In this case, in my opinion, it [referring to the fatal wound] was not consistent with being self-inflicted." He opined that the lack of gunpowder residue on Debra's hands, and the lack of significant blood and tissue "back spatter" on Debra's hand and arm, after the gun discharged while in tight contact with her head, was inconsistent with her holding the gun and self-inflicting the fatal wound. He further testified that the fatal wound was not consistent with the gun discharging while its muzzle was held at a distance two to two and a half inches from her head during a struggle, a description appellant had given in his post-arrest statement to the police. Complying with the trial court's pretrial ruling, he did not testify that Debra's death was consistent with homicide or murder.[2]

The jury convicted appellant of first-degree murder and the use of a firearm in the commission of that murder. Consistent with the jury's verdict, the trial court sentenced appellant to life in prison for murder and three years for use of the firearm. Appellant appealed.

II.

On appeal, appellant contends that the trial court erred in admitting Dr. Presswalla's expert opinion testimony that Debra's fatal injury was inconsistent with self-infliction, and inconsistent with a shooting during a struggle. He contends that Dr. Presswalla's testimony was inadmissible

---

[2] A statement in the autopsy report that Debra's death was a homicide was redacted before the report was received into evidence.

opinion testimony as to the ultimate issue to be determined by the jury, i.e., whether Debra's death was a criminal homicide at the hands of the appellant.

"It is well settled in Virginia that the opinion of an expert witness is admissible 'where the jury, . . . is confronted with issues' that 'cannot be determined intelligently merely from the deductions made and inferences drawn on the basis of ordinary knowledge, common sense, and practical experience . . . .'" Schooler v. Commonwealth, 14 Va. App. 418, 420, 417 S.E.2d 110, 111 (1992) (quoting Compton v. Commonwealth, 219 Va. 716, 726, 250 S.E.2d 749, 755-56 (1979)). "[T]he admissibility of expert testimony is within the sound discretion of the trial court, and that court's decision will not be disturbed absent an abuse of discretion." Patterson v. Commonwealth, 3 Va. App. 1, 11, 348 S.E.2d 285, 291 (1986).

It is equally well settled that "the admission of expert opinion upon an ultimate issue of fact in a criminal case is impermissible because it invades the province of the jury." Velazquez, 263 Va. at 104, 557 S.E.2d at 219; Llamera v. Commonwealth, 243 Va. 262, 264, 414 S.E.2d 597, 598 (1992); Cartera v. Commonwealth, 219 Va. 516, 519, 248 S.E.2d 784, 786 (1978). The reason sometimes given that such expert testimony is prohibited, i.e., that it "usurps the function or invades the province of the jury," suggests that the danger in allowing it is that the jury might forego independent analysis of the facts and bow too readily to the opinion of an expert. 1 John W. Strong, McCormick On Evidence § 12, at 51-52 (5th ed. 1999).

Appellant argues that "only three possible scenarios" explained his wife's death: suicide, accidental shooting during a struggle, or homicide.[3] He contends that Dr. Presswalla's opinion, that

_____

[3] The appellant's various statements to the police as to how the fatal wound was inflicted suggest several different possibilities among others that Debra's fatal wound was: the result of her intentionally shooting herself when she put the gun she knew to be loaded to her head and pulled the trigger; the result of an accident when she pulled the trigger believing the gun to be unloaded; the result of her accidentally pulling the trigger during a struggle with appellant while she tried to commit suicide; the result of her intentionally pulling the trigger as appellant

the physical evidence was inconsistent with a self-inflicted gunshot wound and inconsistent with a shooting during a struggle over the gun, "closed the circle," as it left as the only possible finding for the jury that appellant committed homicide.  See Velazquez, 263 Va. at 104, 557 S.E.2d at 216.  However, the mere fact that an expert's opinion tends to prove the ultimate issue of fact does not preclude an expert from testifying "'where [the] jury, . . . is confronted with issues' that 'cannot be determined intelligently merely from the deductions made and inferences drawn on the basis of ordinary knowledge, common sense, and practical experience.'"  Schooler, 14 Va. App. at 420, 417 S.E.2d at 111.

In Velazquez, relied on by the appellant, the defendant was charged with rape.  There, the trial court permitted a medical expert to testify that the victim's physical injuries were both "inconsistent with consensual intercourse" and "consistent with non-consensual intercourse." 263 Va. at 100, 557 S.E.2d at 216.  The Court held that the expert's combined testimony "closed the circle" and "clearly expressed [the expert's] opinion that [the victim] was raped because [the expert's] opinion excluded all other trauma as the cause of [the victim's] injuries."  Id. at 105, 557 S.E.2d at 219.  Accordingly, the Court held the expert's opinion improperly invaded the province of the fact finder on the ultimate issue of fact to be decided, i.e., whether the accused raped the victim.

The principles reiterated in Velazquez are consistent with numerous prior decisions permitting an expert witness to give opinion testimony regarding his factual conclusions, so long as that opinion does not embrace a legal conclusion, or so long as the opinion is not based on the same evidence the jury has already received and is equally competent to evaluate.  See Hussen v. Commonwealth, 257 Va. 93, 99, 511 S.E.2d 106, 109 (1999) (expert testimony that rape victim's

---

struggled to keep her from committing suicide; or the result of an accidental discharge during a struggle as she tried to shoot appellant.

injury was "not consistent with consensual, first time intercourse" not a comment on ultimate issue of whether the intercourse occurred "against the victim's will"); Compton, 219 Va. at 724, 250 S.E.2d at 756 (where defendant alleged victim was standing, medical examiner's testimony establishing distance from victim from which gun was fired and blood spatter expert's testimony establishing that the "victim could not have been standing erect or nearly erect at the time of the fatal shot" were "evidentiary facts useful to the jury" and did not violate ultimate issue rule); Davis v. Commonwealth, 12 Va. App. 728, 731-32, 406 S.E.2d 922, 923-24 (1991) (detective's testimony that the quantity of drugs possessed by the defendant was inconsistent with personal use did not improperly invade the province of the jury to determine whether defendant intended to distribute the drugs). Cf. Bond v. Commonwealth, 226 Va. 534, 539, 311 S.E.2d 769, 772 (1984) (expert testimony in a murder case that the victim's death was the result of a homicide impermissibly invaded the province of the jury); Knick v. Commonwealth, 15 Va. App. 103, 109, 421 S.E.2d 479, 482 (1992) (pathologist's proffered testimony that physical and scientific evidence was consistent with defendant's theory that the shooting was accidental was an opinion on the ultimate issue of fact and, thus, was properly excluded).

At the time of the argument and ruling on appellant's motion *in limine* to limit Dr. Presswalla's expected testimony, and during the Commonwealth's presentation of its case-in-chief, the Commonwealth could not know what theory appellant would present to account for his wife's death. It was aware that appellant had posited several different accounts of the shooting, including that his despondent wife of less than three months, not knowledgeable about firearms, removed his loaded 10-mm pistol from its holster lying on the top of a desk in the study of her condominium and intentionally or accidentally shot herself while they argued; or that during their argument, she removed the gun from the holster, pointed it at him and that it accidentally discharged within two to two and a half inches from her head while he tried to gain

control of it; or that it accidentally discharged at the same distance while he struggled to prevent her from shooting herself.

The Commonwealth sought to establish that, through the testimony of Dr. Presswalla and the other forensic experts, the physical facts were inconsistent with the appellant's differing versions of how Debra's fatal injury occurred. These "evidentiary facts" were useful to the jury in deciding whether Debra's death was accidental, self-inflicted or a homicide, and whether any of the versions appellant gave to the police were credible. See Compton, 219 Va. at 724, 250 S.E.2d at 756. It was important for the Commonwealth's expert witnesses to explain the impact of the physical and forensic evidence to the jury to aid it in evaluating appellant's differing versions to the police of how his wife died. The significance of these "evidentiary factors" was beyond the scope of knowledge of the average juror.

Dr. Presswalla's expert testimony, in compliance with the ruling from the trial court, did not state that the forensic evidence was consistent with appellant being a criminal agent who caused Debra's death, the ultimate issue before the jury. Simply stated, Dr. Presswalla's opinion testimony, based on his autopsy of Debra's body and the forensic evidence gathered from the body and from the scene of the shooting, was that certain "evidentiary factors" were inconsistent with appellant's descriptions to the police as to how the wound was inflicted. He noted that there was a lack of gunpowder residue on either appellant's or Debra's hands, a finding inconsistent with results obtained when the gun used in the shooting was test fired. He also noted that the lack of any back spatter of blood and tissue from the wound on Debra's right arm was inconsistent with a self-inflicted wound. That testimony tended to prove that appellant's statement to police that Debra picked up the pistol and shot herself was not credible.

Additionally, Dr. Presswalla's testimony that the fatal wound occurred when the muzzle of the pistol was in tight contact with Debra's head, a finding with which appellant's forensic

experts agreed, was inconsistent with appellant's statement to the police that the gun discharged two to two and a half inches from Debra's head as he struggled with her while holding her wrist.

Dr. Presswalla did not testify that the forensic evidence *was consistent with* an unlawful homicide, the ultimate question before the jury. While his testimony may have narrowed the gap, it did not "close the circle."

At the conclusion of the evidence, the trial court instructed the jury that the Commonwealth had the burden of proving beyond a reasonable doubt that appellant unlawfully killed his wife. Additionally, it instructed the jury that the Commonwealth had to prove beyond a reasonable doubt both that Debra did not accidentally shoot herself and that she did not commit suicide.

From the totality of the evidence presented to it, including the interpretations of the forensic evidence by Dr. Presswalla and the other forensic experts testifying for the Commonwealth and appellant, the jury concluded that the evidence proved, beyond a reasonable doubt, that appellant murdered his wife.

III.

For the above reasons, we conclude that the trial court did not err in permitting Dr. Presswalla to testify to the jury that the forensic evidence was not consistent with self-infliction as described by appellant to the police, and not consistent with injury during a struggle over the gun in the manner appellant described, and that such testimony on the record in this case was not impermissible expert testimony as to the ultimate fact to be determined by the jury.[4]

---

[4] Because we conclude that the trial court did not err in admitting Dr. Presswalla's testimony that the forensic evidence was inconsistent with the fatal wound being self-inflicted or that it resulted from the accidental discharge of the gun during a struggle as described by appellant to the police, we do not address the Commonwealth's waiver argument.

Accordingly, we affirm appellant's convictions.

<u>Affirmed.</u>